570 P.2d 513

June Mary **PROVINZANO**, Appellant,

v.

Anthony A. **PROVINZANO**, Appellee.

No. 1 CA–CIV 3244.

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 30, 1977.

Rehearing Denied Sept. 29, 1977.

Review Denied Oct. 25, 1977.

**572**

Meyer & Vucichevich by Henry G. Hester and P. Richard Meyer, Phoenix, for appellant.

Flynn, Kimerer, Thinnes & Derrick by Clark L. Derrick and John J. Flynn, Phoenix, for appellee.

## OPINION

HAIRE, Judge.

On this appeal the contentions raised by the appellant-wife concern the orders entered by the trial court relating to the disposition of the community property of the parties, and to spousal maintenance and child support. When the decree of dissolution was entered the parties had been married for approximately 32½ years.

The record reveals that at the time of the hearing in the trial court, the appellee-husband was 53 years of age, and, immediately prior to the hearing, had voluntarily retired for physical disability reasons after over 30 years of employment with the United States Post Office Department. The petition for dissolution alleged, and the answer admitted, that the Post Office Retirement plan involved was community property. None of the evidence submitted would have supported a finding that it was other than community property, having been earned as a result of the husband's employment during marriage with the Post Office Department. *See generally,* authorities cited, De-FUNIAK & VAUGHN, Principles of Community Property, 2d Ed. § 68.

The testimony was that the payment received as a result of the retirement from the post office employment was $807.95 per month. In addition, the husband also received a military service disability payment in the amount of $233.00 per month. This service-connected disability payment resulted from disabilities incurred by the husband in World War II, at a time when the parties were married.

At the time of the hearing, the wife was 52 years of age and worked as a sales clerk, with a gross income averaging approximately $400.00 per month. In disposing of the community assets,[1] the trial court awarded to the husband the entire commu-

---

1. There were no separate properties involved.

nity interest in the above-mentioned retirement and disability benefits yielding a total monthly payment of $1,041; a life insurance policy having a cash surrender value of between $3500 and $3600; funds remaining from a savings account in the sum of $968; and miscellaneous unvalued a personal property including a 1968 Chrysler, a stamp and coin collection, and the husband's guns, tools, art supplies and books.

The appellant-wife was awarded her community interest in the residence of the parties having an approximate net value of $5,250 (value of the wife's one-half interest);[2] miscellaneous household furniture; and a 1962 Nova automobile. In addition, the wife was awarded the husband's interest in the community residence "as a lump sum maintenance payment."

On this appeal the wife's major contention is that the trial judge abused his discretion and did not make an equitable distribution of the parties' community property. Appellant's contention in this regard relates primarily to the fact that the trial judge awarded the entire community interest in the retirement and disability payments to the husband. A secondary contention urged by the appellant concerns the trial judge's failure to make a child support award to her for a disabled adult daughter of the parties. Additional facts concerning this latter contention will be set forth later in this opinion in our discussion of that question.

█ Considering first appellant's contentions concerning the disposition of the community assets, it appears that, except for the retirement and disability payments, the disposition made by the trial court was approximately equal.[3] During the trial, counsel for the wife attempted to introduce expert testimony concerning the "present value" of the retirement plan. The trial judge rejected this testimony on foundational grounds because of lack of evidence concerning the life expectancy of the husband. The Court was then requested to take judicial notice of the mortality tables appended to the Arizona Revised Statutes. The Court refused to do so, apparently upon the basis that there was actual evidence before the Court showing that the husband was ill and disabled and therefore the average life expectancies set forth in standard mortality tables would not be pertinent. This ruling was clearly erroneous. *See* Udall, Arizona Law of Evidence, § 121; 32 C.J.S. Evidence §§ 719, 770; *Rodgers v. Bryan,* 82 Ariz. 143, 309 P.2d 773 (1957); *S. A. Gerrard Co. v. Couch,* 43 Ariz. 57, 29 P.2d 151 (1934). However, because of the borderline materiality of the "present value" of the retirement benefits under the overall facts of this case, the rejection of this "present value" evidence was not of great importance. Here, the right to receive the retirement and disability benefits had already vested and the monthly payments were actually being received by the husband. If the evidence had shown substantial other community assets so that an award of these retirement and disability benefits to the husband could have been off-set by a corresponding award of other community assets to the wife, then present value evidence would have been important so as to afford a basis for computing off-setting valuations. However, such was not the situation here. Under the facts of this case, no off-setting dispositions could be made, and the only practical way of making an equitable disposition would be to give the wife a present percentage interest (or a specific amount) in the future monthly payments. *Cf. Van Loan v. Van Loan,* 115 Ariz. 322, 569 P.2d 214 (Arizona Supreme Court No. 13129–PR, filed July 22, 1977). We therefore proceed to a consideration of

---

2. There was some discrepancy in the testimony concerning the gross value of the residence, and the trial court did not arrive at any specific valuation. For the purposes of this opinion we have used the valuation agreed to by the parties in their post-trial memoranda.

3. There was a great range in the valuations which the parties placed upon the household furniture. In stating that the disposition was approximately equal, we have taken the evidence in the light most favorable to the husband, and have assumed that the trial court accepted the husband's high valuation.

the basic question of whether the trial judge abused his discretion in awarding this community asset entirely to the husband.

■ A.R.S. § 25–318 directs that in a marriage dissolution proceeding the trial judge shall "divide the community, joint tenancy, and other property held in common equitably, though not necessarily in kind." As we stated in *Lindsay v. Lindsay*, 115 Ariz.(App.) 322, 565 P.2d 199 (1977):

"While the trial court in a dissolution proceeding is not required to divide the community property exactly equally, *Kamrath v. Kamrath*, 17 Ariz.App. 394, 498 P.2d 468 (1972) and has wide discretion, it cannot without reason create a gross disparity, or make its award arbitrarily. Sound discretion has been held to mean that, in the absence of sound reasons appearing in the record which justify a contrary result, the apportionment of the community estate upon dissolution must be substantially equal, *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976); *Britz v. Britz*, 95 Ariz. 247, 389 P.2d 123 (1964)."

The trial judge did not make a substantially equal disposition of the community property in this case, but rather awarded the entire community interest in the retirement and disability benefits to the husband. In our review of the record we find no evidence which would justify such an extreme departure from the equality of disposition principles enunciated in *Hatch v. Hatch, supra*. It is true that the evidence indicated that the husband's disabilities probably precluded future employment on his part, while on the other hand the wife was physically able and was employed and earning a gross amount of approximately $400 per month at the time. Certainly the trial court was entitled to consider this discrepancy in earning ability in making an equitable disposition of the community property, since neither party possessed other income-producing property. But, the disposition made by the trial judge would take away the wife's entire interest in this community property and give it to the husband, thereby giving him a monthly income

of $1,041 per month, while leaving the wife without any income except that which she could earn as a sales clerk, approximating $400 per month. While the trial judge did award to the wife the husband's interest in the community residence "as a lump sum maintenance payment", this small maintenance award could not reasonably be considered as off-setting the substantial discrepancy created by the above disposition. On these facts, we find that the trial judge abused his discretion.

The wife should be awarded a 29% interest in the monthly retirement and disability payments. Such a distribution would give her approximately $302 per month for a total income potential of $702 per month. Subtracting the $302 from the $1,041 presently allocated to the husband would leave him with a monthly income from community property alone of $739. Considering the husband's disabilities and the wife's employment income potential, it is our opinion that such a modification would constitute a more equitable disposition as contemplated by the statutes and Arizona decisions.

■ We next consider appellant's contention that the trial judge erred in refusing to order the husband to pay child support to the wife for a disabled adult daughter of the parties.

Prior to the enactment of A.R.S. § 25–320 B in 1973, the Arizona courts did not have jurisdiction, in the absence of appropriate contractual provisions, to order the payment of child support for an adult child of the parties, even though disabled. *O'Hair v. O'Hair*, 109 Ariz. 236, 508 P.2d 66 (1973); *Genda v. Superior Court*, 103 Ariz. 240, 439 P.2d 811 (1968). A.R.S. § 25–320 B now authorizes the court to make such an award, as follows:

"B. In the case of a mentally or physically disabled child, if the court, after considering the factors set forth in subsection A, deems it appropriate, the court may order support to continue past the age of emancipation and to be paid to the custodial parent, guardian or child."

We have not found any comparably-worded legislative enactments in other jurisdictions, and have encountered some difficulty in determining the intended scope of this provision. The immediate question presented by the facts in this case is whether A.R.S. § 25–320 B authorizes the court to enter a support award for a disabled adult child when at the time of the commencement of the dissolution proceedings, the disabled child had already attained adulthood, and legal custody had not been vested in either parent.

After a careful study of the statute, we are convinced that the court's jurisdiction in this regard is quite limited. First, the court "may order support to *continue* past the age of emancipation" (emphasis supplied). In our opinion this language indicates, at the minimum, a requirement that support payments be commenced during the child's minority with the court then ordering the payments to continue past emancipation. Further, under the statute, the payments are to be paid to the "*custodial* parent, guardian or child." (emphasis added). The daughter involved was 20 years old at the time the dissolution petition was filed. She was not made a party, nor was there any showing that a guardian had been appointed for her. Assuming that the court would have had jurisdiction to do so if such a request had been made, the pleadings did not contain any request that the court award custody of this emancipated daughter to the appellant. We cannot conceive that the issue of custody of an emancipated child could be determined without appropriate pleadings and the child being made a party to the proceedings.

We therefore conclude that (1) the authority of the court under § 25–320 B is limited to situations where the court has acquired jurisdiction prior to the time the child reaches the age of emancipation, and (2) there has been a contemporaneous or prior award of custody of the emancipated child to one of the parents at a proceeding wherein the emancipated child is a party and the issues of the mental or physical disability of the child are presented to the court by appropriate pleadings. Inasmuch as these prerequisites were not present here, the trial judge did not err in refusing to enter an order requiring that child support payments be made to the appellant-wife.

This matter is remanded to the superior court with directions to modify the provisions of the judgment relating to the disposition of the retirement and disability benefits so as to award to the wife a 29% interest therein.

NELSON, P. J., and DONOFRIO, J., concur.