NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of the Estate of:

CHAUNCEY LOUIS LARMER, Deceased.

GLORIA LARMER, *Petitioner/Appellee*

*v.*

JAMES LARMER, *Respondent/Appellant*.

No. 1 CA-CV 15-0561
FILED 10-13-2016

Appeal from the Superior Court in Yavapai County
No. V1300PB201480073
The Honorable Joseph C. Butner, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Linda Wallace, PLLC, Sedona
By Linda Wallace
*Counsel for Petitioner/Appellee*

Gordon & Gordon, PLLC, Cottonwood
By Michael J. Gordon
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Margaret H. Downie joined.

_____

**N O R R I S**, Judge:

¶1            This appeal arises out of a dispute between Respondent/Appellant James Larmer ("James") and Petitioner/Appellee Gloria Larmer ("Gloria"), over the validity of the will of Gloria's late husband, and James's father, Chauncey Larmer ("Chauncey"). On appeal, James argues the superior court, first, misapplied the law in finding the will invalid because James had exercised undue influence over Chauncey and, second, improperly removed him as personal representative of Chauncey's estate. We disagree with both arguments, and affirm the superior court's judgment in favor of Gloria.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2            Chauncey died on April 10, 2014, at the age of 88. In a will he signed on November 6, 2013, Chauncey left his estate to James. Chauncey also nominated James to be the personal representative of his estate. Although Chauncey and Gloria had been together since 1989 and married in 2006, Chauncey left nothing to Gloria. Chauncey also left nothing to his other son, John.

¶3            Several months after Chauncey's death, James petitioned to informally probate Chauncey's will and to be appointed as the estate's personal representative. In the petition, James identified himself, John, and Gloria as individuals entitled to take property under Arizona law.

¶4            Gloria objected to the petition and alleged James had exercised undue influence over Chauncey. Accordingly, Gloria asked the court to invalidate the will and find that Chauncey had died intestate. She also asked the court to remove James as personal representative.

_____

[1]We view the facts in the light most favorable to sustaining the judgment. *In re Estate of Newman*, 219 Ariz. 260, 263, ¶ 3, 196 P.3d 863, 866 (App. 2008).

¶5        The court held an evidentiary hearing to resolve the disputed issues. At the hearing, Deanna S. testified she went to Chauncey's home to serve as a witness to Chauncey's execution of the will. Deanna testified, without objection, that on the first visit she believed Chauncey was concerned about his wife and therefore did not sign the will at that time. She further testified without objection that Chauncey "didn't want to leave her hanging out in the wind . . . . He was being a good husband and wanted to make sure that she was going to be taken care of." Deanna concluded, "I just saw a man at the end of his life worried about his wife. That's it." Approximately two months later, Deanna returned to Chauncey's home, and at that time she witnessed Chauncey's execution of the November 6, 2013 will.

¶6        James testified he hired a paralegal to help draft the will. According to James, he told the paralegal what Chauncey's wishes were. He explained Chauncey had not provided for Gloria in the will because he intended to provide for her through a trust he had previously established for her and from a life estate Chauncey had given her in their home. James added that Chauncey did not include John in the will because Chauncey meant to disinherit him.

¶7        James's wife, Yvonne, testified Chauncey appeared of sound mind when he signed the will. The notary who notarized the will similarly testified there was nothing suspect about the signing and Chauncey willingly signed the will.

¶8        After the evidentiary hearing, the superior court granted Gloria's petition and invalidated the will. In its minute entry, the superior court stated that "although it was innocent, there was undue influence." The superior court also removed James as personal representative and appointed a successor personal representative.

## DISCUSSION

I.    Undue Influence

¶9        James argues the superior court misapplied the law because it failed to appreciate that the presumption of undue influence set out in Arizona Revised Statutes ("A.R.S.") section 14-2712(E)(1) (2012) is rebuttable. We disagree with this argument.

¶10       Under A.R.S. § 14-2712(E)(1), "[a] governing instrument is presumed to be the product of undue influence if . . . [a] person who had a confidential relationship to the creator of the governing instrument was

active in procuring its creation and execution and is a principal beneficiary of the governing instrument." This presumption of undue influence can be overcome by a preponderance of the evidence, A.R.S. § 14-2712(F), with the proponent having the burden of proof, *see Mullin v. Brown*, 210 Ariz. 545, 550, ¶ 17, 115 P.3d 139, 144 (App. 2005). By ruling that James exercised undue influence over Chauncey, the superior court necessarily found James had failed to rebut the presumption. Although the ruling does not explicitly state James failed to overcome the presumption, the superior court's ruling shows an implicit understanding that the presumption is rebuttable. Further, a trial judge is not required to expressly state the burden of proof he or she applied, as the appellate court presumes the judge applied the proper burden of proof. *In re William L.*, 211 Ariz. 236, 238, ¶ 7, 119 P.3d 1039, 1041 (App. 2005) (citations omitted).

¶11 James also argues the superior court misapplied the law because undue influence cannot be "innocent." To the extent that the superior court described James's actions as "innocent," whether the alleged influencer has made fraudulent representations to the testator is only one of several relevant factors in determining whether there has been undue influence. In addition to this factor, other factors include whether: (1) the execution of the will was the product of hasty action; (2) the execution of the will was concealed from others; (3) the person benefited by the will was active in securing its drafting and execution; (4) the will as drawn was consistent or inconsistent with prior declarations and plannings of the testator; (5) the will was reasonable rather than unnatural in view of the testator's circumstances, attitudes, and family; (6) the testator was a person susceptible to undue influence; and (7) the testator and the beneficiary have been in a confidential relationship. *In re McCauley's Estate*, 101 Ariz. 8, 10-11, 415 P.2d 431, 433-34 (1966) (citation omitted). By describing James's involvement in the preparation of the will as "innocent," the court simply found that James had not made any fraudulent representations to Chauncey — a finding supported by the evidence.

¶12 James next argues the superior court's finding that he exercised undue influence over Chauncey was not supported by substantial evidence. Reviewing the superior court's findings for an abuse of discretion, *In re Marriage of Gibbs*, 227 Ariz. 403, 406, ¶ 6, 258 P.3d 221, 224 (App. 2011) (appellate court reviews findings of fact for an abuse of discretion) (citation omitted), we disagree.

¶13 The record supports the superior court's findings that James had a confidential relationship with Chauncey, James was the principal beneficiary of the will, and James was active in the preparation of the will. At the evidentiary hearing and in briefing to the superior court, James's

counsel conceded James was in a confidential relationship with Chauncey. Indeed, the post-trial filing could not have been clearer: "Mr. Larmer [James] admits that he had a confidential relationship with his father [Chauncey]." Further, James retained the paralegal who prepared Chauncey's will and instructed the paralegal on what James characterized as Chauncey's wishes. Finally, James was the only person benefited by the will. This evidence supports the superior court's finding of undue influence. *See Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18, 123 P.3d 1156, 1161 (App. 2005) (substantial evidence is evidence that allows a reasonable person to reach the superior court's results) (quotations and citations omitted).

¶14 Despite the foregoing, James argues the superior court should have found he had rebutted the presumption of undue influence—pointing to testimony from his wife and the notary that there was nothing suspicious about Chauncey's execution of the will. In making this argument, James is, at bottom, asking us to reassess the evidence and the credibility of the witnesses. That is not our role. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 11, 213 P.3d 197, 201 (App. 2009) (appellate court does not reweigh the evidence or substitute its evaluation of the facts) (citation omitted).

II.     Removal of Personal Representative

¶15 James also argues the superior court improperly removed him as personal representative of Chauncey's estate. We reject this argument.

¶16 Under A.R.S. § 14-3611(B)(3) (2012), a superior court may remove a personal representative if it finds the personal representative "has disregarded an order of the court." Here, although the superior court did not explicitly explain why it removed James as personal representative, at the evidentiary hearing it observed that James had failed to comply with a court order—an observation supported by the record.

¶17 Specifically, the superior court ordered James to serve notice of the action to "the heirs and devisees whose addresses are reasonably available to you." Although James identified Gloria and John (plus himself) as possible heirs and devisees and also listed their addresses in his petition to informally probate the will, he did not serve notice of the action on Gloria or John. Therefore, James disregarded an order of the court under A.R.S. § 14-3611(B)(3), and the superior court was authorized to remove him as the estate's personal representative.

III.    Attorneys' Fees and Costs on Appeal

**¶18**    As the successful party on appeal, we award Gloria costs pursuant to A.R.S. § 12-341 (2016) contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21. Gloria has also requested an award of attorneys' fees on appeal but has not cited any authority for such an award. Accordingly, we deny Gloria's request for attorneys' fees on appeal.

## CONCLUSION

**¶19**    For the foregoing reasons, we affirm the judgment of the superior court.



AMY M. WOOD • Clerk of the Court
FILED:  AA