NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

1ST CHOICE SURFACES LLC, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

LAURIE WHITE, *Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 20-0063
FILED 10-27-2020

---

Appeal from the Superior Court in Maricopa County
No. LC2019-000151-001
The Honorable Douglas Gerlach, Judge

**REVERSED**

---

COUNSEL

Brian A. Hatch PLLC, Scottsdale
By Brian A. Hatch
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Law Office of Timothy M. Collier, PLLC, Phoenix
By Timothy M. Collier, Krystle Delgado
*Counsel for Defendant/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

¶1        Laurie White appeals from a superior court order reversing and vacating a final administrative order issued by the Registrar of Contractors ("ROC").  For the following reasons, we reverse the superior court's order, reinstate the final administrative order awarding White $25,043.75 from the Residential Contractors' Recovery Fund ("Fund"), and dismiss as moot the cross-appeal from the denial of 1st Choice Surfaces LLC ("1st Choice") request for an award of  attorneys' fees in the superior court proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        In late 2016, White and 1st Choice entered a contract for remodeling work at White's home, including the installation of tile floors. White became dissatisfied with 1st Choice's work, noticing the tile grout had been applied incorrectly, some installed tiles were unlevel, several installed tiles began to crack, and work materials/debris were left in a recently renovated bathroom and her yard.  Approximately six months after 1st Choice stopped work in White's home, White learned 1st Choice was not licensed to install tile.

¶3        White filed a complaint in the superior court against 1st Choice, alleging, as is relevant here: breach of contract, false advertising or consumer fraud pursuant to Arizona Revised Statutes ("A.R.S.") section 44-1522, fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, negligence, and unjust enrichment.  Three days later, she also filed an administrative complaint with the ROC, alleging 1st Choice performed "poor workmanship" and contracted without a license. White attached a copy of her civil complaint to her ROC complaint.

   *I.        Civil Suit*

¶4        In October 2018, White's claims against 1st Choice proceeded to a jury trial, and the jury found in favor of 1st Choice on all counts.  The

superior court entered judgment in favor of 1st Choice in January 2019, awarding 1st Choice its attorneys' fees and costs. White appealed the verdict, and this court affirmed. *White v. 1st Choice Surfaces LLC* ("*White I*"), 1 CA-CV 19-0206, 2020 WL 1951656 (Ariz. App. Apr. 23, 2020) (mem. decision).

## II. Administrative Proceedings

**¶5** While the civil litigation was proceeding, and after an investigation, the ROC issued a directive to 1st Choice to make certain repairs (the "Directive"); for those repairs requiring a license 1st Choice did not have, the Directive required the contractor to pay to have that work completed by a contractor licensed to perform the work. When 1st Choice did not satisfy the Directive, the ROC issued a citation (the "Citation"), charging failure to satisfy minimum construction standards in violation of A.R.S. § 32-1154(A)(3) and "[f]ailure to take appropriate corrective action" in violation of A.R.S. § 32-1154(A)(22). Following a hearing, an administrative law judge ("ALJ") determined that a preponderance of the evidence showed 1st Choice committed the alleged violations, and the ROC accepted the ALJ's recommended order to suspend 1st Choice's license for one day and impose a $250 civil penalty. 1st Choice did not appeal, and the ROC decision became a final administrative order.

**¶6** Several months later, White filed a claim with the Fund. *See* A.R.S. § 32-1132. The ROC administratively calculated White's actual damages at $25,043.75 and issued a notice of her claim to 1st Choice (the "Notice of Claim"). On 1st Choice's request, the ROC scheduled a hearing "to determine if an award and payment from the Contractors' Recovery Fund . . . is justified by the evidence." A week before the scheduled hearing date, 1st Choice filed a motion for summary disposition, citing the recent superior court defense verdict and arguing it precluded White from receiving an award from the Fund. The ALJ denied the motion and distinguished White's civil claims from White's ROC recovery fund claim, which was based on the violations listed in the Citation. The ALJ denied 1st Choice's subsequent motion for reconsideration, noting, "[N]o evidence pertaining to the violation stated in the Citation . . . or evidence regarding [1st Choice's] failure to comply with the Written Directive . . . is within the scope of the hearing in this matter. Those issues have already been determined and are final."

**¶7** Following a contested hearing, the ALJ issued a decision finding White eligible to make a claim from the Fund and that the ROC's proposed award was supported by evidence. The decision recommended

the ROC order the Fund to award $25,043.75 to White and charge that amount, plus interest, to 1st Choice. The ROC adopted the recommended order, and 1st Choice timely appealed the final administrative order to the superior court.

### III. Superior Court Review

**¶8** On appeal to the superior court, 1st Choice argued the verdict in the trial barred White's recovery from the Fund through claim and issue preclusion. After oral argument, the court reversed the administrative order authorizing the award to White. The court described White's efforts to recover her damages in two forums as "claim splitting" and noted the court in the civil case entered its final, appealable judgment before the ROC issued its final administrative order. As a result, the court reasoned, "White's claim for all, and not merely some, of her monetary damages had been conclusively decided against her." The court also rejected White's argument that the ROC's Notice of Claim constituted an award.

**¶9** White timely appealed, and 1st Choice cross-appealed, arguing the superior court erred in declining to award 1st Choice its attorneys' fees pursuant to A.R.S. § 12-348(A)(2). We have jurisdiction pursuant to A.R.S. §§ 12-913 and -2101(A)(1).

### ANALYSIS

**¶10** An agency order can be reversed only if the reviewing court "concludes that the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E). "The courts should affirm an agency order when . . . the remedy ordered is within the range of permissible dispositions" as authorized by the agency's governing statutes. *Siler v. Ariz. Dep't of Real Est.*, 193 Ariz. 374, 378, ¶ 15 (App. 1998). We review the scope of the agency's authorization to issue a remedy *de novo*. *See McMurren v. JMC Builders, Inc.*, 204 Ariz. 345, 348, ¶ 7 (App. 2003); *see also Better Homes Constr., Inc. v. Goldwater*, 203 Ariz. 295, 298, ¶ 10 (App. 2002) (explaining *res judicata* and collateral estoppel are questions of law we review *de novo*).

**¶11** We disagree with the superior court's determination and 1st Choice's argument that the outcome of the civil suit precluded White's recovery from the ROC Fund. As this court discussed in *White I*, the administrative proceedings and the civil suit raised and litigated separate issues. 2020 WL 1951656, at *1-2, ¶¶ 5, 12-13. When the ROC issued its final order suspending 1st Choice's license for failing to comply with the Directive in violation of A.R.S. § 32-1154(A)(22), White became eligible to

submit a claim for damages arising out of such violation from the Fund. A.R.S. § 32-1133.01(A).[1] The outcome of the civil suit, which was premised and turned on whether 1st Choice had a valid license to perform the contracted work, did not affect that eligibility. The ALJ determined as much, first in denying 1st Choice's motion for summary disposition, and then in addressing 1st Choice's motion for reconsideration of that denial. Rather, the outcome of the civil suit would only affect the *amount* of her award from the Fund:

> If the injured person has recovered a portion of [her] loss from *sources other than the fund*, the registrar, if the award is made pursuant to § 32-1154, or the court shall deduct the amount recovered from other sources from the actual amount of damages suffered . . . and direct the difference, not to exceed thirty thousand dollars, to be paid from the fund.

A.R.S. § 32-1136(E) (emphasis added). Had White been successful in her civil suit, any judgment for damages would have offset any potential award from the Fund.

**¶12** The legislature established the Fund "for the financial protection of residential homeowners injured by the conduct of licensed residential contractors . . . who violate statute or rule." House Bill Summary, S.B. 1397, 54th Leg., 1st Reg. Sess. (Ariz. 2019). "[W]e should liberally construe a statute whose purpose is the protection of the public in order to achieve its objective." *Better Homes Constr.*, 203 Ariz. at 300, ¶ 19. The legislature authorized the ROC's award to White "[n]otwithstanding any other provision in this chapter [regulating contractors]." A.R.S. § 32-1133.01(A); *see City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 144, ¶¶ 16-18 (2017) (interpreting statutory language "[n]otwithstanding any other"). Thus, once 1st Choice's license had been suspended for violating A.R.S. § 32-1154(A)(22), the ROC had the authority to order payment to White from the Fund "to remedy the violation" in spite of any other available remedy White may have pursued against 1st Choice's statutory and contractual responsibilities as a contractor.

---

[1] At the time of the administrative proceedings, the provision governing White's eligibility to recover from the Fund was located at A.R.S. § 32-1154(G) (2018) (amended by 2019 Ariz. Sess. Laws, ch. 145 (1st Reg. Sess.)). The amendment does not materially affect White's eligibility or the ROC's authority to order payment to White.

**¶13**        Neither claim nor issue preclusion apply here.   Claim preclusion prevents a litigant from relitigating an "entire claim[,] including any theories of recovery or demands for relief."   Restatement (Second) of Judgments § 26 cmt. c (1982).  But where an agency, such as the ROC, is tasked with adjudicating only certain statutory or regulatory violations beyond the original jurisdiction of the superior court, claim preclusion does not apply.  *See id.*  As to issue preclusion, there is no indication in the record that the issue before the ALJ—whether an "award and payment [to White] from the Contractors' Recovery Fund . . . is justified by the evidence"—was actually litigated or was otherwise "essential" to the outcome of the civil suit.  *W. Cable v. Indus. Comm'n of Ariz.*, 144 Ariz. 514, 518 (App. 1985). Further, we do not "rigidly" apply these doctrines, particularly "when their application would contravene an overriding public policy or result in manifest injustice."  *Smith v. CIGNA HealthPlan of Ariz.*, 203 Ariz. 173, 179, ¶ 21 (App. 2002) (quoting *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971)).

**¶14**        The ROC's award to White from the Fund is within the "range of permissible dispositions" contemplated by the statutes governing the Fund and is not otherwise contrary to law or an abuse of discretion. Accordingly, we affirm the ROC's final administrative decision and order directing the Fund to pay $25,043.75 to White.  In doing so, we reverse the superior court ruling which reversed and vacated that order.  Because we reverse the superior court's ruling, we dismiss as moot 1st Choice's cross-motion related to attorneys' fees in the superior court.

**¶15**        Both parties request their attorneys' fees and costs on appeal. 1st Choice did not prevail, and we deny its request.  As the prevailing party, White is entitled to her taxable costs on appeal upon timely compliance with ARCAP 21.  We deny her fee request because she has not cited any substantive authority for such award aside from a general reference to ARCAP 21.  *See Bed Mart, Inc. v. Kelley*, 202 Ariz. 370, 375, ¶ 24 (App. 2002) ("[ARCAP 21] only sets forth the procedure for requesting fees; it does not provide a substantive basis for a fee award.").

**CONCLUSION**

¶16          For the foregoing reasons, we reverse the superior court's ruling and affirm the ROC's final administrative decision and order in favor of White.

